# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFFREY S. ROTBLUT and<br>UBO PROPRIETY TRADING, LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| | ) | C.A. N15C-12-024 AML |
| v. | )<br>) | |
| TERRAPINN, INC.,<br>TERRAPINN HOLDINGS, LTD.,<br>and LEWIS C. WILKINS, | )<br>)<br>)<br>) | TRIAL BY JURY OF TWELVE<br>DEMANDED |
| Defendants. | )<br>) | |

Submitted: June 3, 2016
Decided: September 30, 2016

## MEMORANDUM OPINION

James S. Green, Sr., Esquire and Jared T. Green, Esquire, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware; *Attorneys for Jeffrey S. Rotblut and UBO Propriety Trading, LLC*.

Kevin J. Connors, Esquire, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, Wilmington, Delaware; *Attorney for Terrapinn, Inc., Terrapinn Holdings, Ltd., and Lewis C. Wilkins*.

**LeGROW, J.**

This suit arises out of an allegedly defamatory article posted on a website. The plaintiffs have sued the author of the article, the author's employer, and the website's "host." The author and the website's host have moved to dismiss the complaint for lack of personal jurisdiction. The plaintiffs assert this Court may exercise jurisdiction over the movants under Delaware's long-arm statute. I disagree and, for the reasons below, grant the motions to dismiss.

The pending motions require this Court to probe questions of personal jurisdiction at perhaps their most theoretical. Courts across the country increasingly are confronted with cases challenging online conduct and must determine issues of personal jurisdiction over actors engaged in such conduct. These cases highlight the reality that the Internet, which increasingly forms an important part of our day-to-day interactions, exists outside of the state boundaries that define considerations of jurisdiction. The question posed in this case is this: where an allegedly defamatory article caused injury to a Delaware corporation, but the article was posted solely on a website with no connection to Delaware, while the author was outside Delaware, and without any other nexus between either the author, the website's host, and Delaware, can jurisdiction be maintained against the author of the article and the host of the website? Under settled law in this jurisdiction, the answer is no.

1

The plaintiffs argue, persuasively, that this conclusion leads to an unfair and inefficient result, because it will require the plaintiffs to pursue multiple causes of actions in different jurisdictions, with the possibility of inconsistent results and the certainty of increased costs. Although that argument has pragmatic appeal, it cannot overcome the constitutional rigors of the question of jurisdiction.

## BACKGROUND

Plaintiff Jeffrey S. Rotblut is the Chief Executive Officer of Plaintiff UBO Propriety Trading, LLC ("UBO"), an alternative asset manager, research firm, and system developer for institutions and high-net worth individuals (collectively "Plaintiffs").[1] Mr. Rotblut is a New York citizen, while UBO is a Delaware limited liability company. Defendant Terrapinn, Inc. ("Terrapinn") is a Delaware corporation. Defendant Terrapinn Holdings, Ltd. ("Holdings") is incorporated under the laws of the United Kingdom and has a principal place of business in London, England. Defendant Lewis C. Wilkins ("Wilkins") was in Illinois at all times relevant to the allegations in the complaint and presently is a citizen of the District of Columbia.[2]

In August 2013, Terrapinn's New York office invited Mr. Rotblut to participate in a trade conference on automated trading in New York City.[3]

---

[1] Compl. ¶¶ 1-2.
[2] Wilkins Aff. (attached to Wilkins' Mot. Dismiss Ex. A).
[3] Compl. ¶ 8.

2

Terrapinn, a business media company, promotes and conducts trades exhibitions, conferences, training solutions, and electronic and print publications world-wide.[4] At that time, Mr. Rotblut had an "excellent reputation and recognized expertise at developing risk[-]averse trading systems and quant strategies."[5] On December 3 and 4, 2013, Mr. Rotblut participated as a panelist in "The Trading Show New York 2013," hosted by Terrapinn (the "Trading Show").

On December 17, 2013, Terrapinn posted on its "Total Trading" blog an article titled: "Panel: 'Making the trading life cycle more efficient–risk controls, procedures, and compliance' at the Trading Show NYC 2013."[6] Wilkins authored the article, which contained the following sentence:

> Because Jef Rotblut's trading firm once lost $40 million in about 20 minutes, he highlighted the essential roles of mitigating risk through the software development and testing process.

That sentence, however, referenced statements made by a different panelist, not Mr. Rotblut.[7] Because the sentence states that Plaintiffs incurred $40 million in trading losses in 20 minutes, Plaintiffs' ability to raise capital and ongoing discussions with potential investors came to a halt following the Trading Show.[8]

---

[4] Compl. ¶ 7.
[5] *Id*. at ¶ 8.
[6] *Id*. at ¶¶ 11-12. *See* Compl. Ex. A.
[7] The amount stated allegedly also is incorrect and should be $440 million. Compl. ¶ 12.
[8] *Id*. at ¶ 9.

Mr. Rotblut did not learn of the article until July 2015, when he was told he and UBO should "clean up their web presence."[9] Not understanding the meaning of the suggestion, Mr. Rotblut conducted a "Google" search, through which he discovered the article.[10]

On December 2, 2015, Plaintiffs filed a defamation claim against Terrapinn, Holdings, and Wilkins based on the December 17, 2013 article. On April 1 and 8, 2016, Wilkins and Holdings, respectively, filed motions to dismiss for lack of personal jurisdiction. The Court held oral argument on June 3, 2016. This is my decision on the motions to dismiss.

## THE PARTIES' CONTENTIONS

There is no dispute regarding this Court's jurisdiction over Terrapinn. Plaintiffs contend, however, this Court also has personal jurisdiction over Holdings and Wilkins by virtue of 10 *Del. C.* § 3104(c)(3) and (4), which provide in relevant part:

> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: . . .
>
> (3) Causes tortious injury in the State by an act or omission in this State;

---

[9] *Id*. at ¶¶ 10, 16.
[10] *Id*. at ¶ 10.

4

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

Plaintiffs argue Section 3104(c)(3) confers jurisdiction over Holdings because Holdings caused tortious injury in Delaware by "publishing defamatory falsehoods on its website about a Delaware company and its CEO to residents of Delaware."[11] Plaintiffs contend Holdings "published" the defamatory statement because the article was posted on a website "copyrighted to Holdings" and "hosted in the [United Kingdom]."[12] Plaintiffs further contend Holdings "used the terrapinn.com website to publish the defamatory Wilkins[] article in Delaware and elsewhere."[13]

Plaintiffs also argue Holdings is subject to jurisdiction under Section 3104(c)(4) because Holdings regularly solicits business in Delaware through its website. Plaintiffs maintain that "Holdings purposefully directed its articles, content, advertising, and solicitations to residents of Delaware, including by defaming a Delaware corporation and its CEO."[14]

---

[11] Pls.' Resp. Holdings' Mot. Dismiss ¶ 7.
[12] *Id*. at ¶ 4.
[13] *Id*. at ¶ 5.
[14] Pls.' Resp. Terrapinn's Mot. Dismiss ¶ 10.

5

As to Wilkins, Plaintiffs argue this Court has jurisdiction under Section 3104(c)(3) because "by writing the defamatory article for his Delaware employer, which caused the article to be published, [Wilkins] caused tortious injury in [Delaware]."[15] Plaintiffs further argue general jurisdiction is conferred over Wilkins under Section 3104(c)(4) because: "At the time of authoring the defamatory article about a Delaware entity," Wilkins had been "a blogger with Terrapinn since 2011," and therefore "had been, either in person or through an agent, regularly doing business, engaging in other persistent conduct or deriving substantial revenue from Terrapin[n], the publishing Delaware entity, for over two years."[16]

In response, Holdings contends that Plaintiffs fail to meet their burden under subsection (c)(3) because Holdings is "not an operating company"[17] and "was not involved in any way in the publication of the Article dated December 17, 2013."[18] Holdings submitted an affidavit attached to its motion to dismiss, executed by Holdings' Chief Executive Officer (the "Holdings Affidavit").[19] The Holdings Affidavit states that Holdings "did not have any input, control, participation, or specific knowledge regarding the Article."[20] In addition, Holdings argues

---

[15] Pls.' Resp. Wilkins' Mot. Dismiss ¶ 7.
[16] *Id.*
[17] Holdings' Mot. Dismiss Ex. B ¶ 20.
[18] *Id.* at ¶ 19.
[19] *Id.* at Ex. B.
[20] *Id.* at Ex. B ¶ 21.

subsection (c)(3) does not apply in the "absence of any indication that Holdings posted the alleged writing while *in Delaware.*"[21] Holdings contends that, under Delaware law, an internet posting made from outside the state and received by a party inside the state fails to provide sufficient minimum contacts for jurisdiction under subsection (c)(3).[22]

As to subsection (c)(4), Holdings argues Plaintiffs have offered no evidence supporting the allegation that Holdings regularly solicits business, engages in persistent conduct, or derives substantial revenue from its activities in Delaware. Holdings contends it is a holding company that does not do business in Delaware.

Wilkins similarly responds that Plaintiffs have failed to meet their burden to establish jurisdiction under subsection (c)(3), as they have not alleged that he committed a tangible act or omission in the State of Delaware, such as physically entering the state or writing the alleged defamatory article in the state.[23] Wilkins argues the fact that an individual's conduct may have *an effect* in Delaware is not enough to establish that the action causing that effect took place *in* Delaware.

As to subsection (c)(4), Wilkins argues Plaintiffs failed to "establish how Wilkins personally engaged in business or other persistent conduct in Delaware, and in fact, they cannot show as much because [he] does not nor has he ever

---

[21] Holdings' Reply Mot. Dismiss ¶ 3 (emphasis added).
[22] *Id*. at ¶ 4.
[23] Wilkins' Reply Mot. Dismiss ¶ 4.

solicited business or engaged in any persistent conduct in Delaware."[24] Additionally, Wilkins contends that an individual's relationship with a company that allegedly derives substantial revenue from its activities in Delaware is insufficient contact under Section 3104(c)(4) to confer personal jurisdiction over that individual defendant.

## ANALYSIS

Defendants' motions may be resolved based upon the parties' pleadings, affidavits, and briefs.[25] "All allegations of fact concerning personal jurisdiction are presumed to be true."[26] Any factual disputes are to be resolved in the plaintiffs' favor.[27]

When a non-resident defendant challenges *in personam* jurisdiction with a motion to dismiss, the Court applies a two-step analysis.[28] The Court first considers whether jurisdiction may be maintained under Delaware's long-arm statute. If jurisdiction is proper under the long-arm statute, the Court then considers whether subjecting a defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment.[29]

---

[24] *Id*. at ¶ 3.
[25] *Haisfield v. Cruver*, 1994 WL 497868, at *5 (Del. Ch. Aug. 25, 1994).
[26] *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 974 (Del. Ch. 2000) (citing *Haisfield*, 1994 WL 497868, at *5); *see also Greenly v. Davis*, 486 A.2d 669, 670 (Del. 1984).
[27] *Greenly*, 486 A.2d at 670.
[28] *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986).
[29] *Id*.

The plaintiff bears the burden of making "a specific showing that the Delaware court has jurisdiction under the long-arm statute."[30] Under that statute, personal jurisdiction is either general or specific. Section 3104(c)(4) is a general jurisdiction provision, requiring that the defendant have greater contacts with the forum state. Jurisdiction under that section applies "even when the claim is unrelated to forum contacts."[31] In contrast, specific jurisdiction, such as under Section 3104(c)(3), requires a link between the cause of action and the defendant's conduct.[32]

If there is a statutory basis to exercise jurisdiction over the defendant, the Court then will examine whether such an exercise is consistent with due process. Due process requires that the non-resident defendant have "minimum contacts" with the forum so that the litigation does not offend traditional notions of "fair play and substantial justice."[33] The existence of sufficient minimum contacts is determined "from the close examination of the particular circumstances of each case."[34] Each defendant must have purposefully established minimum contacts

---

[30] *Greenly*, 486 A.2d at 670.
[31] *inni360, Inc. v. Zakta, LLC*, 50 F. Supp. 3d 587, 593 (D. Del. 2014) (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991)).
[32] *Kabbaj v. Simpson*, 2013 WL 2456108, at *5 (D. Del. 2013) (citing *Monsato Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006)); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (1997).
[33] *Transportes Aereos De Angola v. Ronair, Inc.*, 544 F. Supp. 858, 865 (D. Del. 1992).
[34] *Id.*

with the forum state such that he reasonably should "anticipate being haled into court" there.[35]

## A. Plaintiffs have not made a specific showing that this Court has personal jurisdiction over Holdings.

For purposes of the pending motions, Defendants concede the article contained a defamatory statement. Although Section 3104(c) "is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause,"[36] Plaintiffs nevertheless must make a specific showing that this Court has jurisdiction over each movant. Plaintiffs argue they have satisfied their burden with evidence that Holdings owns and hosts a website which regularly solicits business in Delaware and on which a defamatory article was posted. As explained below, Plaintiffs' showing is insufficient to confer jurisdiction under Delaware's long-arm statute.

### 1. Plaintiffs have not established jurisdiction under Section 3104(c)(3) because they have not shown the alleged injury was caused by an act or omission in Delaware.

Merely owning the copyright to a website on which a defamatory article was posted does not confer jurisdiction under Section 3401(c)(3). This Court may exercise personal jurisdiction over an out-of-state defendant under Section

---

[35] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[36] *Hercules Inc. v. Leu Trust & Banking Ltd.*, 611 A.2d 476, 480 (Del. 1992) (citing *LaNuova D & B, S.p.A.*, 513 A.2d at 768 ("[S]ection 3104(c) has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause.")).

3104(c)(3) "if the plaintiff demonstrates that the non-resident defendant has caused a tortious injury in Delaware *and* such injury was due to an act or omission by the defendant in Delaware.[37]  "[A]llowing the exercise of personal jurisdiction over a defendant merely because that defendant allegedly caused tortious injury in Delaware would eviscerate the difference between § 3104(c)(3) and § 3104(c)(4), which does not require an act in Delaware."[38]  This Court previously has explained:

> Literally, Delaware law requires both a tortious act within the State and an act or omission within this State. The dual reference to "within the State" indicates that the draftsman intended that there be two separate events, each within the State.[39]

When considering whether the defendant acted in the forum state, courts within the Third Circuit require "something more" from the defendant than "the knowledge that their website could be viewed or that their product could be used in a forum state."[40]  For example, in *Kloth v. Southern Christian University*, the

---

[37] *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *12 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012) (emphasis added).

[38] *Joint Stock Soc. v. Heublein, Inc.*, 936 F. Supp. 177, 194 (D. Del. 1996) (citing *Ramada Inns, Inc. v. Drinkhall*, 1984 WL 247023 (Del. Super. May 17, 1984) (citing *Moore v. Little Giant Indus.*, 513 F. Supp. 1043, 1046 (D. Del. 1981), *aff'd*, 681 F.2d 807 (3d Cir. 1982) ("Plaintiffs' suggestion that the 'tortious act' should be deemed to have occurred where the injury took place would eviscerate the distinction between subsections (c)(3) and (c)(4) of the statute, and must therefore be rejected under generally-accepted principles of statutory construction.") (citing *Mergenthaler v. State*, 239 A.2d 635 (Del. 1968)))).

[39] *Ramada Inns, Inc.*, 1984 WL 247023, at *2.

[40] *See Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 279 (D. Del. 2007), *aff'd*, 320 F. App'x 113 (3d Cir. 2008) (citing *Desktop Techs., Inc. v. Colorworks Reprod. & Design, Inc.*, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999) ("Courts have repeatedly recognized that there must be

11

District Court of Delaware held that specific jurisdiction is proper "[w]hen a defendant's website is specifically designed to commercially interact with the residents of a forum state . . . because that defendant has 'purposefully availed' itself of doing business with the forum state."[41] In *Kloth*, the District Court determined that the defendants could have foreseen that Delaware students might choose to participate in a program described on the website and that the defendants knew that the website could be accessed from Delaware; "[t]his foreseeability, however, [did] not mean that defendants purposefully directed their activities at residents of Delaware or 'purposefully availed' themselves of doing business with Delaware citizens."[42] The *Kloth* Court held there was "no evidence before the court suggest[ing] that defendants purposefully availed themselves of doing

---

'something more' than simply registering someone else's trademark as a domain name and posting a web site on the Internet to demonstrate that the defendant directed its activity towards the forum state."); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125–28 (W.D. Pa. 1997) (rejecting the argument that the defendant merely was "operating a website" or "advertising" and finding that the defendant sold passwords to thousands of subscribers in the forum state and entered into seven contracts with internet access providers to furnish services to their customers in the forum state)); *see also Kane v. Coffman*, 2001 WL 914016, at *5 n.10 (Del. Super. Aug. 10, 2001) ("It is important to note as well that the posting was 'on' an electronic bulletin board. Ms. Kane has not alleged that the bulletin board has any connection with or contact in Delaware; only that she accessed it from her home in this state. Again, without more, that is not enough.").

[41] *Kloth*, 494 F. Supp. 2d at 279 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003)).

[42] *Kloth*, 494 F. Supp. 2d at 279 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

business with Delaware citizens or targeted the contents of their website toward Delaware."[43]

Plaintiffs allege jurisdiction exists because Holdings hosted the website on which its subsidiary posted the defamatory article. The website www.terrapinn.com states: "This site is owned and operated by Terrapinn Holdings Ltd[,]"[44] and the footer of website pages states: "© terrapinn holdings ltd 2014 all rights reserved."[45] Plaintiffs represent, "without the benefit of any discovery, it appears that Terrapinn uses the Holdings' copyrighted and hosted website to solicit and transact the Terrapinn family of companies' business in North America."[46]

Alleging a tortious injury occurred in Delaware is not enough to satisfy subsection (c)(3). Delaware law requires plaintiffs also to establish that the out-of-state defendant committed an act or omission in Delaware. Plaintiffs claim they have made the requisite showing of an act in Delaware because Holdings was using the website to "transact the Terrapinn family of companies' business in North America." But Holdings' knowledge that its website may be viewed in Delaware or accessed by Delaware residents is not sufficient to establish jurisdiction under Section 3104(c)(3). There is no evidence in the record that

---

[43] *Compare Kloth*, 494 F. Supp. 2d at 280, *with Zippo Mfg. Co.*, 952 F. Supp. at 1125–28.

[44] Green Aff. Ex. F, at 1.

[45] *Id*. at Ex. D-F.

[46] Pls.' Resp. Terrapinn's Mot. Dismiss ¶ 5. Plaintiffs chose not to propound any jurisdictional discovery.

Holdings targeted the contents of its website toward Delaware in a way to purposefully avail itself of doing business with Delaware specifically, rather than North America generally. Because Plaintiffs have failed to offer sufficient evidence that Holdings committed an act or omission in Delaware, this Court may not exercise personal jurisdiction over Holdings under Section 3104(c)(3).[47]

### 2. Plaintiffs have not shown general jurisdiction exists under Section 3104(c)(4) because they have not produced evidence that Holdings regularly does business in Delaware.

To subject Holdings to personal jurisdiction in Delaware under Section 3104(c)(4), Plaintiffs have the burden to produce evidence that Holdings regularly does or solicits business in this state, engages in any other persistent course of conduct here, or derives substantial revenue from services or things used or consumed in Delaware.[48] The only evidence submitted on this issue, other than the website copyright, is the Holdings Affidavit stating that Holdings is a holding company, not an operating company; "Terrapinn Holdings, Ltd. is not registered,

---

[47] *See Ciabattoni v. Teamsters Local 326*, 2016 WL 4442277 (Del. Super. Aug. 22, 2016) (dismissing claims based on allegedly defamatory content posted on a Facebook page for lack of personal jurisdiction); *Hidria v. Delo*, 783 S.E.2d 839, 844 (S.C. 2016) (affirming the circuit court's dismissal of the online newspaper's publisher: "[T]he mere accessibility of the articles via unilateral use of the Internet by someone located in South Carolina does not satisfy the traditional minimum contacts analysis under the facts of this case.").

[48] Although Terrapinn, Holdings' allegedly at-fault subsidiary, is a Delaware corporation, personal jurisdiction may not be exercised over a parent corporation simply because of that corporation's relationship with an allegedly at-fault subsidiary, even if the subsidiary is a Delaware corporation. Rather, "both the parent and the subsidiary corporation's contacts with [Delaware] must be assessed individually." *Sternberg v. O'Neil*, 550 A.2d 1105, 1119-20 (Del. 1988) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

14

licensed or otherwise authorized to do business in Delaware"; it "has never maintained an office in Delaware"; it "maintains no assets in Delaware"; it "has never paid any taxes to the State of Delaware"; and it "does not have any ongoing material contractual relationships with any companies or individuals . . . in Delaware."[49] "The fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction."[50] Accordingly, based on the record before me, Plaintiffs have not produced sufficient evidence to support this Court's exercise of general personal jurisdiction over Holdings under Delaware's long-arm statute.

### B. Plaintiffs have not made a sufficient showing that the long-arm statute confers personal jurisdiction over Wilkins.

Plaintiffs maintain Wilkins is subject to jurisdiction in this state under subsections (c)(3) and (c)(4) of the long-arm statute. Plaintiffs have presented evidence that Wilkins authored the defamatory article and worked for a Delaware corporation for two years as a freelance blogger before authoring the article. For the reasons set forth below, I conclude Plaintiffs have not presented sufficient evidence to support this Court's exercise of personal jurisdiction over Wilkins.

---

[49] Holdings' Mot. Dismiss Ex. B ¶¶ 8, 10, 15-17.
[50] *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) ("Nor is the maintenance of a public Internet website sufficient, without more, to establish general jurisdiction.").

**1. Plaintiffs have not established jurisdiction under Section 3104(c)(3) because they have not shown an injury was caused by an act or omission in Delaware.**

"[W]here the claim is one for tortious injury under subsection (c)(3), a single 'act or omission' in the State in which the injury was caused will suffice."[51] At this point, the remaining dispute as to subsection (c)(3) is whether Wilkins committed an act *in Delaware*, as required by the long-arm statute.[52] In order for a defendant to be subject to Section 3104(c)(3), Wilkins, or his agent, must have been present in Delaware when the article was written or published.[53]

Here, Plaintiffs have presented the Court with a tortious act – the defamatory article – and the fact that Wilkins did some freelance blogging for Terrapin, a Delaware corporation, for a two-year period before authoring the article. Plaintiffs, however, have presented no other facts from which this Court can conclude that, when he authored or published the article, Wilkins was in Delaware

---

[51] *LaNuova D & B, S.p.A.*, 513 A.2d at 768.

[52] *Republic Bus. Credit, LLC v. Metro Design USA, LLC*, 2016 WL 3640349, at *8 (Del. Super. June 29, 2016) ("The long-arm statute does not confer personal jurisdiction based merely on tortious injury in Delaware, but on 'tortious injury in the State *[caused]* by an act or omission *in this State*.").

[53] *See Joint Stock Soc.*, 936 F. Supp. at 193 (citing *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, C.A. No. 95–222–RRM at 8–9 (D. Del. Feb. 2, 1996) (slip opinion) (holding "the fact that recipients of the bid letter and the press release republished the allegedly defamatory statements in Delaware does not alter this conclusion")); *see also Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1294 (D. Del. 1990)); *Kabbaj*, 2013 WL 2456108, at *7 (citing *Joint Stock Soc.*, 936 F. Supp. at 193 ("A defendant or his agent must be present at the time of the tortious conduct for the act to be considered committed in Delaware.")).

or had any other presence in or contact with Delaware that would support specific jurisdiction under Section 3104(c)(3).[54]

## 2. Plaintiffs have not shown general jurisdiction exists under Section 3104(c)(4) because they have not produced evidence that Wilkins regularly does business in Delaware.

Similarly, this Court cannot exercise jurisdiction over Wilkins under Section 3104(c)(4). In *Hartsel v. Vanguard Grp., Inc*., the plaintiffs argued the defendants satisfied the "revenue requirement [under Section 3104(c)(4)] because [the] Defendants are high-level officers and portfolio managers of their respective Defendant-employers, and 'it is reasonable to infer that the [] Defendants also derive substantial revenue from the fees that the entit[y Defendants] charge . . . for their services.'"[55] The Court of Chancery pointed out that "Plaintiffs cite no case law or other authority for the proposition that [an] employee's receipt of a salary based on services rendered to a company that allegedly derives substantial revenue from its activities in Delaware is a sufficient contact under § 3104(c)(4) to confer personal jurisdiction over [the employee]."[56] The *Hartsel* Court concluded: "Analytically, it would be prohibitively difficult for a court to attempt to trace an

---

[54] *Kabbaj,* 2013 WL 2456108, at *7 ("In the absence of any indication that defendant posted his writing while in Delaware, § 3401(c)(3) does not apply."); *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 319 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))) ("[T]he plaintiff cannot be the only link between the defendant and the forum [State]. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").
[55] *Hartsel*, 2011 WL 2421003, at *12.
[56] *Id*.

employee's salary back to each of its financial and geographic sources based on the customers for which the employee worked. In addition, I do not agree that receiving a salary, part of which might reflect time spent working to generate fees related to services an employer provided in Delaware, would satisfy the Due Process Clause's minimum contacts requirement."[57]

Plaintiffs generally allege that because Wilkins "has been a blogger with Terrapinn since 2011,"[58] he had been "either in person or through an agent, regularly doing business, engaging in other persistent conduct or deriving substantial revenue from Terrapin[n]" for over two years, and therefore, jurisdiction is proper under subsection (c)(4). Wilkins submitted an affidavit in support of his motion to dismiss, stating: he presently resides in the District of Columbia; he "was a resident of Illinois at all times relevant to the allegations and claims made in Plaintiffs' Complaint"; he "never owned, rented or leased any property in Delaware"; he "never maintained a place of business in Delaware"; he "maintain[s] no assets in Delaware"; and he "do[es] not have any ongoing material

---

[57] *Id.* (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 1994 WL 750535, at *4 n.5 (D. Md. Dec. 16, 1994) (citing *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 n.2 (D. Md. 1990) ("It might be argued that a highly-salaried corporate officer or other corporate employee or a shareholder to whom dividends have been paid has personally 'derive[d] substantial revenue from goods . . . [or] . . . services . . . used or consumed in the State' if the corporation has itself derived substantial revenue from such goods or services . . . . However, the factual difficulties presented in tracing the particular source of salaries or dividend payments are virtually insurmountable, and, constitutional considerations aside, there is no legislative history suggesting that the General Assembly intended that courts should embark on such a radical inquiry in deciding jurisdictional issues."))).

[58] A printout of the article shows an "About the Author" section, stating "Wilkins has been a freelance blogger with Terrapinn since 2011." Terrapinn's Mot. Dismiss Ex. A at 2.

contractual relationships with any companies or individuals, apart from legal counsel, located in Delaware."[59]

Even if receiving a salary from a Delaware company, on its own, satisfies the substantial revenue requirement, Plaintiffs have failed to present any facts to support a finding that Wilkins received a "substantial" salary from Terrapinn for his work as a freelance blogger.[60]   Moreover, Plaintiffs have not alleged that Terrapinn derives substantial revenue from its activities in Delaware.  In addition, the record is devoid of facts that support a reasonable inference that Wilkins otherwise regularly does or solicits business in Delaware, engages in any other persistent course of conduct in Delaware, or derives substantial revenue from Delaware.   Accordingly, Plaintiffs have not shown that Section 3104(c)(4) provides a basis for subjecting Wilkins to this Court's jurisdiction.

## CONCLUSION

For the reasons set forth above, Defendant Terrapinn Holdings, Ltd.'s Motion to Dismiss is **GRANTED** without prejudice, and Defendant Lewis C. Wilkins' Motion to Dismiss is **GRANTED**  without prejudice.

---

[59] Wilkins' Mot. Dismiss Ex. A ¶¶ 3-8.
[60] Even if Plaintiffs offered factual support for this inference, merely receiving a salary likely is insufficient to satisfy the minimum contacts requirements.  *See Hartsel*, 2011 WL 2421003, at *12 (rejecting the argument that high-level officers' and portfolio managers' receipt of salaries based on services rendered to a company that allegedly derives substantial revenue from its activities in Delaware is a sufficient contact under § 3104(c)(4) to confer personal jurisdiction over that defendant).